UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARK ALLEN OLSEN,<br><br>        Plaintiff,<br>v.<br><br>The CITY OF BOISE, IDAHO, et al.,<br><br>        Defendants. | Case No. 1:20-cv-00478-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is a Motion for Summary Judgment filed by the City of Boise, Chief Ryan Lee, and Officer Ian Seavey ("Boise Defendants") (Dkt. 41), as well as a Motion for Summary Judgment filed by the City of Eagle (Dkt. 42). On July 12, 2022, the Court held oral argument and took the motions under advisement. Upon review, and for the reasons set forth below, the Court GRANTS the Motions.

## II. BACKGROUND

### A. Factual Background

The facts underlying this case are simple—Defendant Mark Olsen was arrested by the police on the morning of October 8, 2018, and alleges that the arrest was unlawful. The day before the arrest, on October 7, Officer Ian Seavey, a member of the Boise Police Department ("BPD"), responded to a call in the area of 10501 W. Shields Avenue in Boise, Idaho. He explained that "[t]he call involved a dispute between neighbors, Mark Olsen and Robert Tatilian. During the October 7, 2018 investigation, despite my attempts, I was unable to make contact with Mr. Olsen." Dkt. 41-2, at 2.

MEMORANDUM DECISION AND ORDER - 1

The next day, Officer Seavey was once again dispatched to 10501 W. Shields Avenue to respond to a caller, Samantha Tatilian, who stated that her neighbor, Olsen, was throwing trash and debris at her fence as well as screaming and cursing at her. On the way to the address, Officer Seavey responded to a call from Robert Tatilian ("Tatilian") "who explained the situation that morning and was willing to press charges and sign a citation." *Id*. Upon arrival at the address, Officer Seavey did not see Olsen in the side yard by the properties but "did observe a pile of debris near the front of Mr. Tatilian's property, which was consistent with the complaint." *Id*.

Olsen disagrees with the stated reason that Officer Seavey came out to his residence.[1] According to Olsen, the actions that brought the police to his residence were all part of a conspiracy between the arresting officers and Tatilian, who was a Boise County Deputy Sheriff at the time of the incident. Dkt. 45, at 4. Olsen was curious why officers were in his yard despite the prominently posted "no trespassing" signs because he had been "experiencing an unfriendly relationship with [his] neighbor, Mr. Robert Tatilian" as Olsen had allegedly reported Tatilian a number of times to the code enforcement personnel for various code violations. *Id.* at 2. Olsen believes the event precipitating the arrest "was supposedly an alleged event occurring two days earlier with [Tatilian]" but admitted he did not interact with Tatilian on either October 6 or October 8. *Id*. at 3. Olsen concluded that the arrest was "a result of the deteriorating and negative relationship I had developed with

---

[1] Olsen also claims that the arrest took place at 8:49 am on October 8, 2018, but that the citation given to him states that the arrest was at 10 am. Regardless of who is correct, the exact time of the arrest is immaterial.

MEMORANDUM DECISION AND ORDER - 2

my neighbor, Mr. Tatalian." *Id*. at 5.

According to the video footage from Officer Seavey's bodycam,[2] Officer Seavey approached Olsen's house, looking for Olsen. He announced himself several times, stating "Mark, Boise Police!"[3] Officer Seavey observed his business card from his previous visit was still stuck in the side door of Olsen's house. Officer Seavey then saw a different officer had found Olsen behind his garage filleting a fish on the top of an overturned trash can and walked over to contact Olsen.

Officer Seavey said "Hey Mark! Come talk to me." Olsen gestured and remained where he was. Officer Seavey quickly said "Nope, put the knife down Mark. Put the knife down. We're going to talk." Olsen responded in a somewhat agitated tone, although the words were not clearly audible. Olsen gestured with the knife as part of the discussion. Officer Seavey could hear him though and replied "I understand. Put the knife down or I'm going to arrest you right now." Olsen said, "For the purpose of?" Officer Seavey said "R&O. My name is Officer Seavey. Put the knife down." Olsen said "What's the purpose?! What are you doing here?!?" Olsen continued to gesture with the knife. Officer Seavey said again, for the fourth time. "Mark!" Olsen tossed the knife onto his garbage can and began walking briskly towards Officer Seavey, who instructed him to "[t]urn around, put your hands behind your back." Officer Seavey then reached out and made contact with

---

[2] Olsen does not dispute the accuracy of the recording. *See* Dkt. 44, at 4; Dkt. 45, at 2.

[3] The quotes in this section come from the body cam footage physically filed with the Court by Boise Defendants. *See* Dkt. 41-2, at 5.

MEMORANDUM DECISION AND ORDER - 3

Olsen's right arm. Olsen then raised his right elbow high above his head, with his arm disappearing from the view of the camera. Olsen's left hand, which had been open, clenched into a fist and came around towards Officer Seavey. After a scuffle, Olsen was forced to the ground and subdued.

Although the facts of what happened are clearly before the Court, there are some factual questions the Court need not decide today. Did Olsen act aggressively towards Officer Seavey? Was he resisting and obstructing? While the officers claim Olsen was being aggressive, Olsen claims he was not. While these facts are important for context, because this case involves a *Monell* claim, these facts are not material to the Court's determination of whether the challenged policy leading to this confrontation was unconstitutional.

After the arrest, Officer Seavey transported Olsen to the Ada County Jail. Along the way, Officer Seavey received a call from Tatilian.[4] Officer Seavey told Tatilian that Olsen was in custody, and that he was going to sign Tatilian's name to the citation instead of Samantha as they had "talked about it yesterday." Dkt. 50, "Drive to Jail, Convo with Tatillian (sic) RE Plan," 04:47 – 05:45. Officer Seavey also said he would give Tatilian a call later when he was done recording. Olsen claimed that this was evidence of a conspiracy.

---

[4] Olsen stated that he had heard the conversation and that a copy of the conversation "can be made available for review." Dkt. 44, at 7. However, Olsen did not provide the conversation for review to the Court until the Court ordered him to do so. Olsen subsequently produced the conversation. Dkt. 50. The Court has listened to the recording.

MEMORANDUM DECISION AND ORDER - 4

Olsen also claimed that only after he was arrested "was [he] told that [he] had been arrested for disturbing the peace and resisting arrest." Dkt. 45, at 3.[5] According to the supplemental footage, however, Officer Seavey told Olsen in the car that he was being arrested for resisting and obstructing, and for disturbing the peace. Dkt. 50, "Drive to Jail, Convo with Tatillian (sic) RE Plan," 10:40–10:46. The reports filed by Officer Seavey confirm that those were the charges Olsen was arrested on. Dkt. 41-3, at 1, 3.

Some background is also necessary to understand how the City of Eagle is involved in this case. The City of Eagle entered into a Joint Powers Agreement ("Agreement") with the Ada County Sheriff's Office ("ACSO") in which the ACSO agreed to provide law enforcement services to the City of Eagle for a scheduled fee. Section 1.7 of the Agreement clearly states that "[t]he ACSO is acting hereunder as an independent contractor" and that "[a]ll persons rendering service hereunder shall be for all purposes employees of the ACSO." Dkt. 42-3, at 9. The ACSO's powers in the City of Eagle were limited, as the City of Eagle promised "to confer municipal police authority on such ACSO deputies as might be engaged hereunder in *enforcing City ordinances within City boundaries*." *Id.* at 10 (emphasis added). The City of Eagle website states the City of Eagle began contracting with the ACSO in 1996. Dkt. 42-3, at 55; Dkt. 42-3, at 5–14. The Agreement provides for the employment of all officers, and the City of Eagle does not enter into contracts with individual ACSO officers. Dkt. 51, at 2.

---

[5] Although Olsen may not have been officially told the cause for his arrest until he was in Officer Seavey's vehicle, it is clear from Officer Seavey's footage that Olsen had also been warned prior to his arrest that he may be arrested for resisting and obstructing.

MEMORANDUM DECISION AND ORDER - 5

One of the individuals who was present at the time of Olsen's arrest was Lieutenant Patrick Calley. Lieutenant Calley was employed by the ACSO as a Lieutenant, and pursuant to the Agreement he also served as the Chief of Police of the City of Eagle Police Department. Lieutenant Calley swore that at all times relevant herein he was an employee of Ada County and not the City of Eagle. Dkt. 38-2, at 2.

### B. Procedural Background

Olsen filed the instant case on October 8, 2020. Dkt. 1. Olsen's complaint contained two counts—both of which fall under 42 U.S.C. § 1983. *Id*. at 13, 15.

Olsen's first § 1983 claim is titled: "Lack of Probable Cause and Constitutional Violations." *Id*. at 13. There is some confusion, however, about what this count is actually for. As part of the current briefing, Olsen claims he "chose to consider his claim a civil rights claim for the acts of intentional misconduct in committing unconstitutional acts with the unlawful arrest, unlawful imprisonment, excessive use of force, and statutory violations committed under color of law." Dkt. 44, at 8–9. He adds that his first count includes battery and unlawful trespass. *Id*. at 8. Olsen also claims that "the threshold question to be addressed is whether the use of force was excessive to conduct the arrest, and then whether the arrest was unlawful." *Id*. at 16. Boise Defendants argue that "this statement encompasses more claims than alleged within the complaint" and that the language of Olsen's complaint "does not state with any specificity what the constitutional offenses may be, other than an unlawful arrest." Dkt. 48, at 3. The Court agrees. Olsen's Complaint was sloppily written. But even looking at his allegations with broad brushstrokes, Olsen *did not* allege then what he claims to be alleging now. Thus, the Court must analyze Olsen's

Complaint in further detail to ascertain what he actually alleged and what Defendants were actually on notice of.

Upon review, the Court finds Count One is only a Section 1983 claim that the arrest of Olsen was unlawful. Several factors support this conclusion. First, Olsen is aware that § 1983 claims must be pled separately—as shown by his inclusion of two separate § 1983 claims in his Complaint. Second, the first cause of action begins by discussing unlawful arrests, and mentions unlawful arrests multiple times. Dkt. 1, at ¶ 18. Third, the language Olsen used describes the arrest and states officers arrested him "with the unnecessary and abusive use of unreasonable force." *Id*. This language implies that the force used was part of the arrest and is a component of the unlawful arrest instead of a separate charge. *Id.* Finally, Olsen refers to "additional criminal acts of trespass and battery, in which excessive physical force was being used." *Id.* at ¶ 20. This is a civil case, not a criminal one.

The second count is also a § 1983 claim alleging "Conspiracy to Deny or Deprive Plaintiff Equal Protection, Equal Privileges And/Or Equal Immunities Under the laws." Dkt. 1, at 15. This count alleges that the officers "did conspire to cause Plaintiff to be unlawfully arrested, battered, detained, falsely imprisoned and wrongfully charged, and done [sic] so as to violate Plaintiff's constitutional rights . . . ." *Id*.

Consequently, Olsen's conclusory allegations of "unlawful trespass, the battery, the use of excessive force, the abuse of process . . . and the unlawful imprisonment" (Dkt. 44, at 8) are mere window dressing or subsets of the two counts that Olsen actually brought before the Court in his Complaint.

Finally, as it relates to damages, Olsen seeks over $200,000 in monetary damages,

as well as the removal and expungement of any records or materials concerning his arrest and imprisonment.

The Court previously granted a Motion to Dismiss filed by Chief Lee and Officer Seavey (Dkt. 21) and dismissed the claims against them in their individual capacities (Dkt. 36). Another Motion to Dismiss was filed by Defendants Lieutenant Patrick Calley, Deputy Aaron Boswell, Deputy Neil Daigle, and Deputy Amanda Wentz. Dkt. 38. The Motion was unopposed and the Court granted the Motion and dismissed Lieutenant Calley, Deputy Boswell, Deputy Daigle, and Deputy Wentz in their individual and official capacities as well. Dkt. 39. As it stands, the only remaining defendants are the Boise Defendants (including Chief Lee and Officer Seavey in their official capacities) and the City of Eagle. Both groups of defendants filed the instant motions for summary judgment, which Plaintiff filed a response to.[6]

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering

---

[6] Olsen's Response, which responds to both motions, is thirty-five pages long, which clearly violates the twenty-page limit prescribed in Local Rule 7.1(c)(1). Olsen never filed a motion to file an overlength brief. However, because the opposing parties did not object, the Court will not strike the response at this time. Olsen is warned to not file overlong briefs without permission in the future.

MEMORANDUM DECISION AND ORDER - 8

a motion for summary judgment, the Court must "view[] the facts in the non-moving party's favor." *Id.* To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (citation omitted). Accordingly, the Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

## IV. ANALYSIS

At the outset, the Court notes that Plaintiff's briefing in this case has been poor. Unfortunately, this is not an isolated incident. Plaintiff's counsel, Vernon K. Smith, was recently suspended from the practice of law in Idaho for five years. *Idaho State Bar v. Vernon K. Smith, Jr.,* Docket No. 49155, at 27 (Idaho July 15, 2022). Notably, the Idaho Supreme Court criticized Smith for "fail[ing] to support most of his brief with cogent legal argument and authority—a dereliction for which he has repeatedly faced admonition and sanction from this Court." *Id*. at 26.[7] Despite the poor briefing, the Court has done its best

---

[7] Plaintiff's Counsel's suspension does not take effect until the Idaho Supreme Court's decision is made final. Thus, it is appropriate for the Court to rule on these ripe motions while Smith still represents Olsen.

MEMORANDUM DECISION AND ORDER - 9

to construe Olsen's arguments in an understandable light and in the spirit of what he intended to say.

### A. Boise Defendants

#### 1. *Unlawful Arrest*

The Boise Defendants make several points in their Motion for Summary Judgment. First, they assert Olsen has not adequately alleged the required elements of a *Monell* claim for unlawful arrest because Olsen has not established "that there were any policies or customs within BPD directing officers to commit unlawful arrests," and indeed, that the policies presented require BPD to act lawfully. Dkt. 41-6, at 6. Second, Boise Defendants allege Officer Seavey had probable cause to arrest Olsen. Third, and finally, Boise Defendants argue Olsen cannot present specific facts to support his conspiracy claim.

In response to the allegation that he has not sufficiently plead a *Monell* claim, Olsen points to Idaho Code Section 19-603(6) and (7) as being the unconstitutional statutes that the officers relied on. Dkt. 44, at 17. Olsen's claim is rife with errors, but the Court will nevertheless address the most reasonable interpretations of his arguments.[8]

In general, "[t]o establish § 1983 liability, a plaintiff must show both: (1) the deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation was committed by a person acting under color of state law." *Chudacoff*

---

[8] For example, Olsen wrote that "When acts are committed under color of law and constitute a Constitutional violation, the commission of such an unlawful act by other officer(s) creates agency liability for their wrongful acts under the doctrine of *respondeat superior* and subject to civil rights claims." Dkt. 44, at 9. In the context of a *Monell* claim, as the Court later discusses, this statement is patently false.

MEMORANDUM DECISION AND ORDER - 10

*v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011) (citing *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003)). To bring a § 1983 claim against a governmental entity or private entity performing a governmental function, a plaintiff must allege: (1) the plaintiff was deprived of a constitutional right; (2) the municipality or entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001). Such a claim is considered a *Monell* claim.

Under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), a governmental entity may not be held responsible for the acts of its employees under a *respondeat superior* theory of liability. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). Rather, because *Monell* liability rests on the actions of the entity, and not the actions of its employees, a plaintiff must go beyond the *respondeat superior* theory of liability and demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local governmental unit. *See Brown*, 520 U.S. at 403; *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell*, 436 U.S. at 690–91. A plaintiff must, therefore, show "deliberate action attributable to the municipality [that] directly caused a deprivation of federal rights." *Brown*, 520 U.S. at 415 (emphasis removed). "Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability," which is impermissible. *Id.*

The Supreme Court has held that "[s]tate officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the

government that employs them." *Hafer v. Melo*, 502 U.S. 21, 27 (1991). Furthermore, the Supreme Court has explained, "There is no longer a need to bring official-capacity actions against local government officials, for under *Monell* . . . local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Ninth Circuit courts have echoed this refrain. *E.g., Hillblom v. Cnty. of Fresno*, 539 F. Supp. 2d 1192, 1202 (E.D. Cal. 2008) (noting that "the officer is a redundant defendant and may be dismissed"); *Luke v. Abbott*, 954 F. Supp. 202, 203 (C.D. Cal. 1997) ("[W]hen both an officer and the local government entity are named in a lawsuit and the officer is named in official capacity only, the officer is a redundant defendant and may be dismissed.") (citing *Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996)).

Here, the claims against Chief Lee and Officer Seavey in their individual capacity were dismissed, leaving the claims against them in their official capacities. As their employer, the City of Boise, is being sued, the remaining claims against Chief Lee and Officer Seavey can properly be dismissed.

In order for Olsen's claims against the City of Boise to survive summary judgment under *Monell*, he must demonstrate that an official policy or custom led to a constitutional violation, not that Officer Seavey personally violated his rights. Olsen points to Idaho Code Section 19-603 (6) and (7) as the unconstitutional statute that the City of Boise relies on. They state:

> A peace officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person:

> (6) When upon immediate response to a report of a commission of a crime there is probable cause to believe that the person has committed a violation of section 18-901 (assault), 18-903 (battery), 18-918 (domestic violence), 18-7905 (first-degree stalking), 18-7906 (second-degree stalking), 39-6312 (violation of a protection order), 18-920 (violation of a no contact order), or 18-3302I (threatening violence upon school grounds--firearms and other deadly or dangerous weapons), Idaho Code.
>
> (7) When there is reasonable cause to believe, based upon physical evidence observed by the officer or statements made in the presence of the officer upon immediate response to a report of a commission of a crime aboard an aircraft, that the person arrested has committed such a crime.

First, Idaho Code § 19-603(6) was held unconstitutional in *State v. Clarke*, 446 P.3d 451, 457–58 (Idaho 2019). Second, the Court does not know why Olsen is pointing to Section 19-603(7), as no parties have alleged that Olsen was ever aboard an airplane during the events at issue.[9]

Olsen accordingly argues that because the police arrested him for a misdemeanor committed outside of the officers' presence that the officers violated the Idaho Constitution, which (Olsen alleges) accords with the federal Constitution. One problem, *inter alia*, exists with Olsen's claim—he was arrested for not just disturbing the peace but also for resisting and obstructing, an act which was committed in the presence of the officers, as shown by the dash cam footage that both parties agree is accurate. *Even if* that footage is reviewed by a jury and it determines Olsen was not being aggressive, the fact remains that he was booked for resisting and obstructing, which he did in the presence of the officers. As such, the officers clearly did not rely on Section 19-603(6), and Olsen's

---

[9] Olsen mentioned I.C. § 19-603(7) in his briefing and several times at the hearing, so there is no error on the part of the Court in concluding that Olsen was pointing to subpart seven.

case crumbles because he cannot meet the *Monell* standard.[10]

2. *Conspiracy*

In his Second cause of action Olsen's alleges Defendants conspired to violate his rights. "To state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. County of* King, 888 F.2d 819, 821 (9th Cir. 1989) (citing *Coverdell v. Dept. of Social and Health Services,* 834 F.2d 758, 769 (9th Cir. 1987)). Furthermore, "[t]o establish liability for a conspiracy in a § 1983 case, a plaintiff must demonstrate the existence of an agreement or meeting of the minds to violate constitutional rights." *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (cleaned up). Thus, not only must Olsen credibly demonstrate there was a conspiracy, but he must tie the conspiring acts to some policy or agreement Defendants had in place at the time of the events. Olsen has provided a phone call between Officer Seavey and Tatilian in which they discuss Tatilian signing the citation instead of Samantha Tatilian based upon their previous discussions. However, it seems like Olsen is alleging that the constitutional rights violated (as a result of the conspiracy) are those in Section 19-603 (that he was falsely arrested). As such, Olsen's conspiracy claim necessarily fails for two reasons. First, as discussed above, Olsen was arrested for resisting and obstructing, not solely for a misdemeanor committed outside

---

[10] Although the Boise Defendants argued they had probable cause to arrest Olsen, the Court need not reach that issue as Olsen cannot mount the required threshold showing for a constitutional deprivation.

the presence of the police.[11] Second, Section 19-603 is a *state* statute, not a federal one. "Section 1983, however, only creates a cause of action for violations of the federal Constitution and laws." *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1391 (9th Cir. 1997). Thus, Olsen cannot rest a federal claim on state laws. Accordingly, Olsen's conspiracy claim against the Boise Defendants is also dismissed.

### B. City of Eagle

The City of Eagle's Motion for Summary Judgment is straightforward. The City of Eagle contends that it is tied to the Olsen situation only because "it entered into a contract with ACSO wherein the sheriff's office would provide law enforcement services within the city boundaries in exchange for monies" (Dkt. 5, at 10), and that one of those officers (Officer Patrick Calley) who provided service to the City of Eagle was present at the arrest. However, under the Agreement, when the ACSO was not acting on behalf of the City of Eagle, the City of Eagle had no liability for ACSO's actions. Thus, the ACSO officer was not acting for the City of Eagle because he was assisting City of Boise police officers *within Boise city limits*. Furthermore, the City of Eagle contends that Olsen has not met the *Monell* standard because Olsen has not established "a policy or custom adopted by Eagle City Council or its police department which changes the nature of officers who enforce laws within city boundaries or accepts liability for county officers who assist other officers to enforce laws in another city." Dkt. 42-1, at 8.

---

[11] If the officers had arrested Olsen solely for disturbing the peace, or if this case had been brought in state court under different claims, this case could have a different outcome. But that is not what happened here, either factually or procedurally. The Court is bound to rule only on the claims and facts brought before it.

Olsen seemingly agrees in his response, stating that "[t]he City of Eagle was sued because it was believed Patrick Calley was then the Chief of Police of Eagle, but apparently only then acting as a cross-deputized officer on a dispatch . . . ." Dkt. 44, at 13. In response to the City of Eagle's argument that the ACSO deputies were employees of ACSO, not the City of Eagle (and therefore the City of Eagle had no liability), Olsen opines that "that may be true, but the ultimate issue remains that some agency is responsible for the unlawful actions of these law enforcement Officers acting under color of law on behalf of and within the jurisdictional limits of the City of Boise, and engaging in the act of using excessive force to accomplish an unlawful arrest of a person under the official authority of the City of Boise." *Id.* Olsen further goes on to state that Lieutenant Calley was "acting under color of law for the City of Boise" and that "[t]he City of Boise remains responsible for the acts of all the officers." *Id.*

Accordingly, although muddled, it seems that Olsen is conceding he has no real claim against the City of Eagle. Furthermore, even if the Court generously construes Olsen's comments and concludes he is not conceding the point, Olsen still loses his claim against the City of Eagle. Olsen has offered no case law demonstrating why the City of Eagle bears liability for Lieutenant Calley's actions. Indeed, Olsen does not try to. Furthermore, Olsen does not point to *any* policy from the City of Eagle that would render it liable for Olsen's allegedly unlawful arrest under *Monell*. The City of Eagle does not enter into agreements with individual officers, and *only* has the Joint Powers Agreement with the ACSO, which *clearly* indicates that the City of Eagle does not bear liability for the actions of ACSO officers when they are not acting on behalf of the City of Eagle. And

although Officer Seavey states that he was accompanied by ACSO deputies "acting in their capacity as Eagle City Police," Officer Seavey is no expert on municipal liability. Dkt. 41-2, at 3. Even if he was, he is not in the position to pass judgment on that issue. That is the Court's role. In the same way that the Court would not rely on an officer's judgment as to whether probable cause existed for his or her actions, the Court is not bound to Officer Seavey's interpretation of whether the ACSO deputies were acting on behalf of the City of Eagle. They were not.

Thus, judgment is GRANTED in favor of the City of Eagle. Both counts against the City of Eagle are DISMISSED.

## V. CONCLUSION

Olsen's claims rested upon the unconstitutionality of Idaho Code Section 19-603. As the officers did not rely on that statute to arrest Olsen, Olsen's claims against the Boise Defendants fail out of the gate. Furthermore, however, Olsen presented zero evidence to demonstrate the Boise Defendants had a policy or custom of depriving people of any constitutional rights. There is no *Monell* claim here.

Olsen's claims against the City of Eagle also fail because the City of Eagle bears no liability for the actions of the arresting officers.

## VI. ORDER

The Court HEREBY ORDERS:

1. Chief Ryan Lee, Officer Ian Seavey, and the City of Boise's Motion for Summary Judgment (Dkt. 41) is GRANTED.

2. The City of Eagle's Motion for Summary Judgment (Dkt. 42) is GRANTED.

MEMORANDUM DECISION AND ORDER - 17

3. Mark Olsen's Complaint is hereby DISMISSED WITH PREJUDICE and this case is CLOSED. A Judgment shall be entered concurrently.

DATED: August 2, 2022

David C. Nye
Chief U.S. District Court Judge